Number 19-3108, District of Minnesota, United States v. Adan Flores-Lagonas. Alright, Mr. Hagler, please proceed. Thank you, your honors. May it please the court, Tom Hagler representing Mr. Adan Flores-Lagonas. Starting with the first issue, the Terry Stopp suppression issue, it's our position the lower court should have excluded all the evidence collected as a result of the illegal stop and seizure. Police were not justified in conducting a Terry Stopp because their suspicions were based on a mere hunch. What the government describes- Was there even a Terry Stopp when he just drove off? Well I think that's what's at issue here, your honors, that it initially began with what would have been a Terry Stopp, but because Mr. Flores-Lagonas was provoked into flight by the police not properly identifying themselves, they weren't all wearing police uniforms, and they came at him with their guns pointed at him, which provoked him into flight. But if you go back to their first reason to stop him, they didn't have articulable suspicion. They had a hunch, and I think the government described that- Counsel, as to Judge Grundy's question, I think it is interesting. Was a stop actually, did they actually stop him until after the accident? They did not stop him until he ran off the road, your honor, but they attempted to stop him, and I think that's what provoked his flight. Why wouldn't this be analyzed from the standpoint of the justification of evidence obtained after the accident? Well, we're looking at it as a fruit-of-the-poisonous-tree argument, your honor, where anything- Did he have to have a stop first? Yeah, the initial reason that they tried to stop him for was that- I mean, in the government's brief, they say that his van looked strange or odd. I mean, that's describing a hunch, your honor, and the fact is that they tried to stop him because he was the only Hispanic in the lot. The point is, does it really matter whether it was a hunch or not at that point, given that there was no Terry stop until much later, when we can consider all the traffic violations and all the other reasons that they could have pulled him over? Well, I think there is a high risk to the public in the actions taken by law enforcement here trying to do this takedown in the middle of a crowded shopping center, and- That's a policy question rather than- Well, if the government's position is that the police can come at you and point their gun in your face and then not identify themselves, and then you drive off and commit some minor traffic violation, then they have a reason to stop you. I think that's problematic, and it should be deterred by the exclusionary rule. Counsel, as Judge Holken, what's your best case supporting this provoked flight theory? Well, the Wardlow case is sort of the inverse of this, right? Where they were in a high drug area and the suspect ran off unprovoked, and I think the inverse of that is this was not a high drug area. This was a shopping center, and police are going to be able to provoke people into- Have you got a case where provoked flight was deemed to be a Terry stop, and then evaluated for lawfulness? Your Honor, I did not find a case that was- I'm not aware of any, and there are always new theories emerging. I just wanted to know if you had found anything. Thank you. So I think that without reasonable suspicion, they shouldn't have even tried to stop him, and all the evidence should have been excluded. But moving on to the other issues, we had a motion to dismiss was essentially handled by the court as a motion for reconsideration, and I think the court erred there when it viewed his motion to dismiss as just a reconsideration. The lower court reasoned that the issue had been raised, but it actually had not been. And if you go through the initial motion for suppression, it never mentions false testimony or police perjury or any of the new issues that were raised by my client's second appointed counsel. Why does the court's characterization of the motion make any difference? Is there a different standard you argue should have been applied? Or did he just have to say, deny motion to dismiss, and if he didn't say that, he made reversible error? Well, your honor, I think it is an error to just not even consider the motion to dismiss in the due process context. And that's what the court did. They just said, oh, this is a rehashing of the suppression issue, and didn't even look at due process. And I think it's a denial of due process when the government allowed false evidence to come in and go uncorrected. And the first case this morning had a similar issue where the government knew that false evidence was being introduced in the suppression hearing, and they failed to correct it. And then for the court to just ignore that was, I think, a reversible error. And there are several factual areas that are provably or demonstrably false based on the video evidence that we have, and I filed that with my brief. The video shows that not all the police had police vests on. Some of them were wearing plain clothing. How does it help with perjury? Well, I think there were a number of just false statements put into evidence by the government, and they failed to correct it. There were a lot of false statements that were obviously false looking at the video evidence that we have. You're going to have to be a lot more specific than that to be persuasive. For example, there was the testimony that Flores Ligonas committed a felony by nearly striking an officer on foot with his van. That's false. We can see in the video that there's a car in between the van and the police officer. It would have been impossible for him to commit a felony in that manner. Another police officer testified that all the law enforcement officers were wearing police tactical vests. That's false. We can see that in the video. Police claimed a white substance was being thrown out of the van's window. There's no evidence to support that. In fact, there's more evidence that suggests the whole thing was made up. One, no substance was ever recovered. Some of the police admitted they weren't sure whether he was throwing things out the window or not. A police canine dog was brought in and went up and down the highway, didn't find any drugs. I mean, that to me should be pretty definitive that he wasn't throwing things out the window. I can't imagine an issue that's more immaterial. It's what happened after. It doesn't matter what was thrown out the window other than it was incriminating. But he then rolled down the embankment and fled. That was what triggered the arrest. My client also has claimed in his filings that the police lied about these bullets and gun magazines being found on his person. He said that wasn't the case. That didn't happen. And I'm saying that there were other falsehoods. Did he testify? No, your honor. Well, so then this is not an example of false testimony. If I could move on to the third issue, your honor, the speedy trial. You know, my client sat in jail pre-trial incarceration for over four years. And, you know, yes, there were motions made to exclude time and for continuances. But as my client has claimed in later filings, he said that his first attorney did those things without his consent or coerced him into consenting. And those those delays were basically they were caused by his first attorney's medical issues and personal family issues. And they weren't caused by the defendant himself. You know, but the biggest concern here is the joinder of the co-defendants, which reset the clock multiple times. And, you know, this jockeying for position resetting his clock multiple times by adding defendants at the last minute was unreasonable. And, you know, maybe technically we didn't go over the 70 days in the Speedy Trial Act. But I think it violates the spirit of the law and it violates his Sixth Amendment right to a speedy trial. And I think, you know, there are four factors in the Doggett case. They're favoring my client's claim, you know, that the delay was uncommonly long. The government is more to blame for the delay. Mr. Ligonis, Flores Ligonis did assert his right to a speedy trial and he did suffer prejudice as a result. And the 8th Circuit has said that a 37 month delay is presumptively prejudicial. Was there specific prejudice in this case as opposed to presumed prejudice that you can point to? Well, the absence of evidence or a witness or the lie? Well, Your Honor, with such a lengthy and oppressive pretrial incarceration, Mr. Ligonis felt compelled to plead guilty so that he could begin his appeal process. And I think, you know, somebody sitting there in the county jail and being shuffled around and these competency things, which he never asked for. I mean, I think, you know, he I think that's the reason he wanted to fire his first attorney was even was asking for a competency evaluation. And that delayed his case another two, two and a half years. I mean, and I think that was inherently prejudicial. Him not knowing, you know, his fate, being shuffled around in these different facilities without, you know, I think that caused him sort of coerced him into pleading guilty. But if there's no other questions, could I reserve for rebuttal? Certainly. Thank you, Mr. Hagler. Mr. Buzicki. Good morning, Chief Judge Smith. Ms. Buzicki. Excuse me. I'm sorry. Please. I don't I don't have your visual in front of me. So I misread your first name. So please excuse me. Do you are you able to see my video now? No, right now I'm just looking at a circle with KB on it. Oh, I apologize. Should I log out and log back in? What would the court prefer? I can hear you just fine. So please proceed. Yes, Your Honor. I certainly will. My name is Kate Buzicki, and I represent the government in this case. I'll begin by addressing the first issue raised by the defense regarding the parking lot events and the subsequent arrest of Mr. Flores-Lagones. There was no stop in the parking lot in this case, as Judge Grunder has correctly pointed out. The officers had decided to make an arrest, and when they did so, Mr. Flores-Lagones sped up, collided into the jeep, the unmarked jeep, and sped away. When he did so, he began flight, which the Supreme Court has said is a consummate act of evasion. And in the manner of his flight, he certainly gave rise to probable cause to arrest under Minnesota state law, as the district court found. But there was probable cause to arrest him before then. As the record in this case reveals, there had been an extensive, approximately two-month-long investigation into drug trafficking in southern Minnesota. Numerous individuals had been identified. There were recorded phone calls involving cooperating individuals. And at this stage, law enforcement's goal was to locate and identify the individuals who were responsible for drug transactions. Mr. Flores-Lagones himself directed the cooperating individual to the parking lot as a place for the drug transaction to take place, and chose that site specifically as opposed to a motel that had been the earlier site for the planned transaction. The officers observed a number of things that gave rise to suspicion. Sergeant Shuler, who is considered an experienced narcotics investigator, specifically testified that he saw strange movements of the vehicle. So it wasn't simply that the vehicle was strange, it was the behavior of the driver, and that was Mr. Flores-Lagones. There were also interactions between individuals in the parking lot, on foot, near vehicles that were known to be associated with the drug conspiracy, entering and exiting stores as planned as part of the transaction. All of those facts gave rise to probable cause to arrest in this case. And then obviously, as the high-speed chase and subsequent on-foot chase ensued, there was additional probable cause to arrest Mr. Flores-Lagones. So with no stop in the parking lot, and with an ample amount of probable cause relating to both the narcotics investigation and the events of the high-speed chase, this was a lawful arrest, and the subsequent search was lawful and in accordance with this court's precedent. If there are no questions related to that issue, I'd like to briefly address the motion to dismiss for alleged police perjury. The defense counsel has raised a number of statements or actions that he believes constitute false statements. And simply put, the record in this case reflects that the officers testified in a measured, accurate, and truthful way, and the video in this case provides only a limited window into any of the events in the parking lot. As this court is well aware, videos can show facts, but they don't always show the entire picture. And that's precisely the case with this surveillance video. Review of the video shows that the vantage of the camera is impeded by items like signs, and even the car itself impedes a full view of what happened in the parking lot. And critical incidents in that parking lot are covered by those impediments. So the video is simply additional evidence, but it doesn't in any way controvert the testimony of Officer Green and Sergeant Shuler. And I'd like to point the court to the transcript of the pretrial motions hearing in this case. On page 39, there is the question about whether the officers were wearing marked uniforms or what kind of gear they had on. And the testimony is, I believe they were. I know at least two of them that I saw immediately were wearing them. I can't for sure say all four were, but they were wearing marked. And so again, that officer's testimony is measured. It is not overselling or misrepresenting what he saw. He's attempting to recall an answer to a question and trying to provide accurate information. There is no false testimony in this case. And again, the government presented evidence in support of its contention that the events in the parking lot and the subsequent high-speed chase created probable cause to, or excuse me, at the district court level, reasonable suspicion. But we believe the better argument is probable cause to arrest Mr. Flores-Lagones. And unless there are any questions regarding that matter, I will next turn to the final issue in this case, the speedy trial matter. Mr. Flores-Lagones has asserted that his speedy trial rights were violated, both with respect to the Sixth Amendment and the Speedy Trial Act. While it is true that there was a long delay in this case, that delay is well accounted for by an extensive pretrial proceeding involving his competency. Both his counsel, the district court, and the government were concerned about his mental health and well-being for various reasons. His counsel alerted the court to threatening or menacing actions by Mr. Flores-Lagones in their own interactions. The government offered incidents in which Mr. Flores-Lagones made a motion looking like cutting someone's throat at a witness at the pretrial suppression hearing. And the district court itself observed Mr. Flores-Lagones respond in a completely nonsensical and troubling way at a pretrial conference. So the order for a competency determination was absolutely appropriate. And it goes to what the Speedy Trial Act tries to accomplish, which is balancing the public's rights and the defendant's rights. The defendant has a right not to be tried when he is mentally unwell, and the public has a strong interest in not having those who are incompetent being forced to undergo a criminal trial. So while the scrutiny of his mental health took a long time, it took a long time because this was a complicated case involving a variety of very difficult facts and evaluation. Counsel, didn't it take two commitments to the Attorney General to restore his competency? That's correct, Your Honor. The district court made a number of efforts to ascertain. Is there any authority for not excluding that? I'm sorry. That time would clearly be excluded, wouldn't it? I don't know under what subsection, but I can't imagine the Speedy Trial Act would count that, the time it takes to restore a charged person's competency to stand trial. I see. So if I understand Your Honor's question, you're asking if the Speedy Trial Act deals with individuals who are found to be incompetent and the time it takes to restore their competency. Right. Yes, that's not specifically mentioned in the Speedy Trial Act, although you may interpret it as being subsumed in delay resulting from any proceeding, including examinations to determine the mental competency. And so while the restoration process isn't mentioned in the act, I don't find any authority. We haven't found any authority that would say that the restoration process can't be considered as part of subsection H1A of the Speedy Trial Act. In this case, Your Honor, the delay, again, fits well with the intent of the Speedy Trial Act itself. The public, again, has no interest in having someone who is mentally unfit or incapable of assisting in his own defense to be tried. And the statements on the record by the defendant make clear that he was not at that time capable of proceeding in a way that would be acceptable to this court or the public. With respect to the joinder of co-defendants, which was also raised by defense counsel in this case, there was one superseding indictment which simply added a small number of additional defendants. This was not the kind of dilatory conduct or stratagems to try to delay the case. In fact, the district court found all to the contrary and described the government as diligent and continually preparing for trial in this case. And the record supports that. Every time a trial date was set or a pretrial conference was set, the government was ready to proceed. The government filed its pretrial motions at the appropriate time and even took the extraordinary step of filing two motions to ask the district court to calculate the number of speedy trial days in this case. So in conclusion, unless the court has any other questions related to that issue, I'll rest on the briefs. We ask the court to affirm all of the rulings of the district court with respect to this appeal and we rest on our briefs. Counsel, I'm Judge Loken. I'm just reflecting on whether since the Speedy Trial Act is silent as to this competency time, it strikes me there ought to be a pretty good argument that the clock doesn't begin until the competency has been restored. Your Honor, that's certainly a strong argument because an individual who is not competent should not be, again, forced to participate. They can't be prosecuted. Certainly, they can't be as Your Honor correctly states. So that's certainly one way to approach it if the language of the statute is not sufficient. Thank you, Mr. Zicke. Mr. Agnew, your rebuttal. Thank you, Your Honor. Starting with that third issue, since it's fresh in our discussion here, I think, you know, Mr. Lagones, Flores Lagones was ultimately found competent. And, you know, I don't think the government can rightfully say that he was being restored to competency because the final evaluator said, well, he wasn't really, you know, he didn't really have a mental health problem. It was that he became indoctrinated while he was in the jail with these ideas about sovereign citizenship and these pseudo legal arguments. And I think that combined with his, I guess, his light grasp on the English language contributed to the idea that he was incompetent to stand trial when that wasn't the case. And so he wasn't being restored during that time because he never was actually incompetent. And that's what the final evaluation says. And I think, you know, it's just a miscarriage of justice to have somebody sitting in the jail for years and years and years because people don't understand what he's saying. And, you know, he's got these strange beliefs, but he's not mentally ill. And then to move on to the, you know, the attempt of the first issue, I think the stop, the attempted stop initiated the entire sequence. And I think if the Supreme Court has said that unprovoked flight is an act of evasion, they never said that provoked flight was. And it's important to remember that police were looking for a white pickup truck and they singled out my client because he was the only other Hispanic man in the parking lot. And I think that's very problematic and, you know, a violation of his rights. And as far as the second issue, there is in the transcripts one police officer, at least one officer said that all the officers were wearing tactical gear with police on it. And that's in the district court document 618 at 39 and 40. Thank you, Mr. Hagler. Court wishes to thank both counsel for your participation in arguments this morning. We appreciate how you have helped clarify the issues in the matter, and we will take the case under advisement.